IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| CHANDRA RENITA DENNINGTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-18-752-STE |
| | ) | |
| NANCY A. BERRYHILL, Acting | ) | |
| Commissioner of the Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration denying Plaintiff's application for benefits under the Social Security Act. The Commissioner has answered and filed a transcript of the administrative record (hereinafter TR. ____). The parties have consented to jurisdiction over this matter by a United States magistrate judge pursuant to 28 U.S.C. § 636(c).

The parties have briefed their positions, and the matter is now at issue. Based on the Court's review of the record and the issues presented, the Court **AFFIRMS** the Commissioner's decision.

I.  **PROCEDURAL BACKGROUND**

Initially and on reconsideration, the Social Security Administration (SSA) denied Plaintiff's application for benefits. Following an administrative hearing, an Administrative Law Judge (ALJ) issued an unfavorable decision. (TR. 23-32). The Appeals Council denied

Plaintiff's request for review. (TR. 1-3). Thus, the decision of the ALJ became the final decision of the Commissioner.

## II. THE ADMINISTRATIVE DECISION

The ALJ followed the five-step sequential evaluation process required by agency regulations. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); 20 C.F.R. § 416.920. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since July 23, 2015, her application date. (TR. 25). At step two, the ALJ determined that Ms. Dennington had the following severe impairments: "major depressive disorder, generalized anxiety disorder, rule out panic disorder, and degenerative disc disease, hip disorder." (TR. 25). At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal any of the presumptively disabling impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1 (TR. 28).

At step four, the ALJ concluded that Ms. Dennington retained the residual functional capacity (RFC) to:

> [L]ift and carry 20 pounds occasionally and 10 pounds frequently. The claimant sit for about six hours during an eight-hour workday and can stand and walk for about six hours during an eight-hour workday. The claimant can frequently climb, balance, stoop, kneel, crouch, and crawl. The claimant can perform simple and some complex tasks. The claimant can relate to supervisors and co-workers on a superficial work basis. The claimant can adapt to work situations. The claimant can have frequent contact with the general public (semi-skilled). 20 CFR 416.967(b).

(TR. 29). At the administrative hearing, the ALJ questioned Ms. Dennington and a vocational expert (VE) to assess Plaintiff's past relevant work. (TR. 45-49, 58-69). In doing so, the VE testified that an individual with Ms. Dennington's RFC was capable of performing her past work as a personal caregiver, and a motel cleaner, as she had

performed those jobs. (TR. 63). Thus, at step four, the ALJ concluded that Ms. Dennington was not disabled based on her ability to perform these past jobs, as she had actually performed them. (TR. 31-32).[1]

## III. STANDARD OF REVIEW

This Court reviews the Commissioner's final "decision to determin[e] whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010). Under the "substantial evidence" standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). "Substantial evidence … is more than a mere scintilla … and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. at 1154 (internal citations and quotation marks omitted).

While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (internal quotation marks omitted).

---

[1] At first glance, the ALJ's findings are somewhat confusing, as he states that "the claimant is able to perform [the job of personal caregiver] as actually performed," which could be read to mean that Plaintiff could perform the job as it is actually performed in the national economy, as set forth in the DOT. However, the ALJ clarifies that his actual finding is that Ms. Dennington is able to perform the job, as *she* had actually performed it in the past. *See* TR. 31 ("This work as performed by the claimant does not require the performance of work-related activities precluded by the claimant's residual functional capacity.").

## IV.    ISSUES PRESENTED

On appeal, Ms. Dennington alleges multiple errors at step four.

## V.    STEP FOUR

Ms. Dennington alleges that the ALJ erred at phases one and two of step four, which resulted in a lack of substantial evidence to support his ultimate finding at step four. The Court disagrees.

### A.    The ALJ's Duties at Step Four/Plaintiff's Arguments

At step four, the Tenth Circuit has mandated that the ALJ perform a specific three-phase analysis:

> In the first phase, the ALJ must evaluate a claimant's physical and mental residual functional capacity (RFC), … and in the second phase, he must determine the physical and mental demands of the claimant's past relevant work. In the final phase, the ALJ determines whether the claimant has the ability to meet the job demands found in phase two despite the mental and/or physical limitations found in phase one[.] At each of these phases, the ALJ must make specific findings.

*Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996) (internal citations omitted).

In assessing the RFC, the ALJ must consider the limitations and restrictions imposed by a claimant's impairments, as set forth in the objective record and as alleged by the claimant, and express any limitations in terms of specific, work-related mental activities he or she is able to perform. *See* Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims, SSR 96-8p, 1996 WL 374184, at *5-7 (July 2, 1996).

Ms. Dennington has argued that the ALJ erred at phase one by: (1) engaging in impermissible selective review of two State Agency psychologists' opinions and (2) failing

to credit certain testimony at the hearing. (ECF No. 16:10-12). Plaintiff argues that the ALJ erred at phase two by: (1) ignoring Plaintiff's testimony regarding the exertional level at which she performed her past job as a personal caregiver and (2) concluding that she had performed her past job of motel cleaner at a level which qualified as "substantial gainful activity." (ECF No. 16:12-13). Because of the errors at phases one and two, Ms. Dennington contends that substantial evidence does not exist to support the phase three findings that Plaintiff could return to her past relevant work.

## B. Phase One

As stated, phase one of step four involves the ALJ's evaluation of the claimant's RFC. *See supra*, *Winfrey*. Here, the ALJ concluded, in part, that Plaintiff had the RFC to "have frequent contact with the general public[.]" (TR. 29). Ms. Dennington challenges this portion of the RFC by arguing that the ALJ reached this conclusion by: (1) engaging in selective review of opinions from two State Agency psychologists and (2) ignoring her testimony. (ECF No. 16:10-11, 12). The Court rejects both arguments.

### 1. The ALJ's Evaluation of Opinions from Two State Agency Psychologists

On November 16, 2015 and February 3, 2016, State Agency psychologists Dr. Mary Rolison and Dr. Carolyn Goodrich evaluated Plaintiff's mental RFC at the initial and reconsideration levels of the disability determination. (TR. 81-83, 96-98). In doing so, they each completed a form which was comprised of three steps. On the form, the author is first instructed to answer a series of questions "to help determine the individual's ability to perform sustained work activities." (TR. 81, 96). If the individual is limited in a certain area, the author is required to rate the level of limitation. Second, after rating the degree

5

of limitation, the author is instructed to provide a narrative discussion "which describes how the evidence supports each conclusion"—which is considered "the actual mental residual functional capacity." (TR. 81, 96). Third, the author may record "[a]ny other assessment information deemed appropriate in the area denoted as "MRFC—Additional Explanation." (TR. 81, 96).

Both Drs. Rolison and Goodrich concluded that Plaintiff was "moderately limited" in her ability to interact appropriately with the general public and was "not significantly limited" in: (1) the ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes and (2) the ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness. (TR. 82, 97-98). When asked to explain the effects of these limitations, both Drs. wrote "see ae"—referring to the "additional explanation" portion of the form. In that area of the form, both psychologists wrote:

> Clmt can perform simple and some complex tasks
> Clmt can relate to others on a superficial work basis
> Clmt can adapt to a work situation

(TR. 83, 98). The ALJ accorded these opinions "substantial weight." (TR. 31).

Ms. Dennington alleges that the ALJ erred in his evaluation of the opinions from Drs. Rolison and Goodrich because each psychologist opined that Plaintiff was "moderately limited" in her ability to interact appropriately with the general public, yet the RFC stated that Plaintiff could have "frequent contact with the general public." (TR. 29); (ECF No. 16:10). According to Ms. Dennington, the ALJ: (1) selectively reviewed the opinions, ignoring the limitation regarding contact with the general public and (2) "failed

to cite any evidence supporting his finding on Dennington's ability to interact with the public." (ECF No. 16:10-11). The Court rejects both arguments because: (1) the RFC mirrors the three "MRFC" findings from Drs. Rolison and Goodrich[2] and (2) the ALJ specifically supported his finding for "frequent contact with the general public" by relying on the findings from both psychologists that Plaintiff was "not significantly limited" in: (1) the ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes and (2) the ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness. (TR. 82, 97-98). Both findings were proper and no error occurred.

In *Smith v. Colvin*, 821 F.3d 1264 (10th Cir. 2016), the Tenth Circuit Court of Appeals addressed a similar challenge. There, a consultative physician had completed a form to assess the plaintiff's RFC, and opined that the plaintiff was "moderately limited" in several areas of work-related abilities. *Smith*, 821 F.3d at 1268. The form had explained that these findings, "provided only an aid" to assess the plaintiff's RFC. *Id.*, at 1268, n.1. The form further instructed the psychologist to assess the actual RFC in a narrative. *Id.* In the narrative, the psychologist stated that the plaintiff could: (1) engage in work that was limited in complexity and (2) manage social interactions that were not frequent or prolonged. *Id.* The ALJ's RFC was similar to that authored by the psychologist in the narrative. *Id.*

On appeal, the plaintiff questioned how the ALJ's RFC had incorporated all of the moderate limitations that the psychologist had listed. *Id.*, at 1269, n.2. In response, the

---

[2] *Compare* TR. 29 *with* TR. 82, 97-98.

7

Court stated, "this is the wrong question." *Id.* According to the Court, "[The psychologist's] notations of moderate limitations served *only as an aid* to her assessment of residual functional capacity. We compare the administrative law judge's findings to [the psychologist's] opinion on residual functional capacity, *not* her notations of moderate limitations." *Id.* (emphasis added).

In rejecting the plaintiff's challenge, the Court cited *Lee v. Colvin*, 631 F. App'x 538 (10th Cir. 2015). In *Lee*, the plaintiff asserted a similar challenge, arguing that the ALJ had not expressly incorporated specific moderate limitations into the RFC which had been given by a psychologist which the ALJ had accorded "great weight." *Lee*, 631 F. App'x at 541. The Court rejected the challenge, citing the SSA's Program Operations Manual Systems (POMS) which stated that "adjudicators are to use the . . . narrative as the RFC assessment" rather than the accompanying worksheet which rated the degree of limitation in particular areas. *Id.* In *Lee*, the ALJ had adopted the "narrative" section of the psychologist's RFC which accounted for the moderate limitations the psychologist had listed, even though the narrative was not a verbatim recitation of the rated limitations. *Id.* at 541-42.

In *Smith*, the Court adopted the approach taken in *Lee* and concluded:

> The administrative law judges in *Lee* and in our case did not repeat the moderate limitations assessed by the doctor. But both administrative law judges incorporated these limitations by stating how the claimant was limited in the ability to perform work-related activities.

*Smith*, 821 F.3d 1269.

*Smith* is controlling in the instant case. Here, Drs. Rolison and Goodrich had rated Plaintiff's degree of limitation in several areas, and found that Plaintiff was "moderately

8

limited" in her ability to interact appropriately with the general public. (TR. 82, 97-98). But as in *Smith* and *Lee*, the narrative portion of the form, was considered the "actual mental residual functional capacity." (TR. 81, 96). There, the psychologists translated their specific findings into an RFC which stated that Ms. Dennington could:

- perform simple and some complex tasks;
- relate to others on a superficial work basis; and
- adapt to a work situation

(TR. 83, 98). The ALJ adopted these findings,[3] which, according to *Smith*, "is acceptable in our circuit." *Smith*, 821 F.3d at 1269. Under *Smith*, the ALJ was not required to explain why he had not adopted the finding regarding a "moderate" limitation on Ms. Dennington's ability to deal with the general public. Even so, the ALJ explained that he had based his finding that Plaintiff could have "frequent contact with the general public" on other findings from Drs. Rolison and Goodrich. *See* TR. 31.

Based on *Smith*, the Court rejects Ms. Dennington's argument that the ALJ had selectively reviewed the opinions from Drs. Rolison and Goodrich.

### 2. The ALJ's Evaluation of Plaintiff's Testimony

Plaintiff argues that the ALJ ignored her testimony regarding the difficulties she would have in returning to the job of personal caregiver. (ECF No. 16:12). According to Ms. Dennington, she doubted she would have the patience to deal with clients and the ALJ did not give this testimony "any consideration when determining whether she could return to her PRW as a caregiver." (ECF No. 16:12). The Court rejects this argument, as

---

[3] *See* TR. 29.

the ALJ acknowledged this portion of the testimony, he just chose not to credit it. *See* TR. 30. Plaintiff does not challenge the ALJ's reasoning in the evaluation of her testimony or point to any other evidence to support her claim. The ALJ weighed the evidence, and concluded that Plaintiff could have frequent contact with the general public. (TR. 29). In doing so, the ALJ relied on the opinions from Drs. Rolison and Goodrich, as discussed. *See supra*. This finding was proper and provided substantial evidence for the RFC.

### C. Phase Two

As stated, at phase two of step four, the ALJ must determine the physical and mental demands of the claimant's past relevant work. *See supra*, *Winfrey*. Plaintiff argues that the ALJ erred at phase two by concluding that: (1) Plaintiff had performed her past work as a personal caregiver at the "light" exertional level and (2) Plaintiff had performed her past work of motel cleaner at the level of "substantial gainful activity." (ECF No. 16:12-13). The Court rejects both arguments.

#### 1. The Exertional Level at Which Plaintiff Worked as a Personal Caregiver

At step four, the ALJ concluded that Ms. Dennington had the RFC to return to her past relevant work as a personal caregiver, as she had actually performed that job, at the "light" exertional level.[4] (TR. 31-32). In doing so, the ALJ relied on evidence which documented a telephone conversation between an SSA employee and Ms. Dennington, found at Exhibit 5E. (TR. 32). Plaintiff argues that the ALJ erred in reaching this conclusion

---

[4] The Social Security Regulations describe "light" work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 416.967(b).

because he ignored her testimony and improperly relied on Exhibit 5E. (ECF No. 16:11-12). The Court disagrees.

At the hearing, Plaintiff testified about her past work as a personal caregiver, stating that at times she might provide physical support to a client in getting in and out of the shower. (TR. 59). When the ALJ asked Ms. Dennington how much weight she would have to support, she stated "Well, say if a person weighed 200 and they're helping get in, and they're just—they've got my arm underneath their arm, I don't know if that would be about 100—." (TR. 59). The VE stated that this testimony supported a finding that Ms. Dennington had performed this job at the "heavy" exertional level. (TR. 62).[5]

Prior to the hearing, an employee from the SSA had spoken with Ms. Dennington on the telephone regarding her past relevant work and documented the phone call at Exhibit 5E. (TR. 245). The written record of the phone call states:

> Spoke w/ the clmt regarding her past work. Her past work as a care giver and in maid service were the same job.
>
> Clmt made beds and dust. She said she worked 3 days a week.
>   —heaviest lifted 10 lbs;
>   —frequently 10 lbs;
>   —standing/walking 3 hrs; sitting 3 hrs;
>   —no hire/fire/supervise
>   —no heavy machinery used (she did not use a vacuum cleaner)

(TR. 245).

Plaintiff argues that the ALJ erred in crediting Exhibit 5E over her testimony at the hearing to conclude that she had performed the job at a "light" level. (ECF No. 16:11).

---

[5] The Social Security Regulations describe "heavy" work as "lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds." 20 C.F.R. § 416.967(d).

11

Plaintiff argues that Exhibit 5E (which describes a "light" level) describes "both the caregiver and motel cleaner jobs … [and] [f]rom the report, it is difficult to determine which of the two jobs Dennington had described." (ECF No. 16:11). Based on the "lack of clarity," Plaintiff argues that the ALJ improperly relied on Exhibit 5E over Plaintiff's testimony, which she contends described the work at the "heavy" exertional level.

The Court is sympathetic to Plaintiff's position, as her past work is a bit confusing. Apparently, the personal caregiver job, also included some light maid service work for her clients even though Plaintiff had listed personal caregiver and maid service as separate jobs on the "job history" section of Form 3368—the "Disability Report." *See* TR. 223. Another conversation on February 4, 2016 between Plaintiff and an SSA employee helps clear the confusion. The documentation of that conversation states:

> Rep Nelda called the claimant & asked about the jobs listed on 3368. Clmt stated that the person who took the application must have misunderstood. The job was care giver for home health from 7/2000 to 9/2013. she did do some maid type services such as making beds, dusting, some cleaning. She ran errands for the client, picked up items at store, did some cooking.

(TR. 265). Based on the evidence, the Court concludes that Exhibit 5E describes only one job—the job of personal caregiver—which Plaintiff herself described as involving "light" work.[6]

With this finding, there exists competing sources of evidence, both from Ms. Dennington regarding the exertional level of her past work as a caregiver. On the telephone to the SSA employee, Plaintiff described the work as "light." (TR. 245). At the

---

[6] The job of personal caregiver, which included some light maid service, was distinct from Plaintiff's past job of motel cleaner, which Plaintiff testified involved cleaning the lobby and sweeping stairwells, but did not involve cleaning the motel rooms, like a maid service. (TR. 60).

12

hearing, Plaintiff described the work as "heavy." (TR. 59). The ALJ credited the information in Exhibit 5E over Plaintiff's testimony at the hearing, to reach the conclusion that Plaintiff had performed the past work of personal caregiver at the "light" exertional level. (TR. 32). The ALJ's findings were supported by substantial evidence—the information in Exhibit 5E. "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ]'s findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). The Court will not re-weigh the evidence to reach a contrary conclusion. *See Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (stating that the court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency.") (internal quotation marks omitted).

### 2. The Motel Cleaner Job

Finally, Ms. Dennington argues that the ALJ erred at phase two by concluding that the motel cleaner job had qualified as "past relevant work." (ECF No. 16:12-13). "To be considered past relevant work, a claimant's previous work must rise to the level of substantial gainful activity." *Newman v. Chater*, 91 F.3d 159, 1996 WL 375359, *1 (10th Cir. 1996) (citation and internal quotation omitted). "Substantial gainful activity" is defined as doing significant physical or mental activities for a profit whether or not a profit is realized. 20 C.F.R. §§ 416.972(a), (b). The amount of money earned doing a particular job is a primary consideration in determining whether a person is engaged in substantial gainful activity. 20 C.F.R. § 416.974(a)(1).

Plaintiff argues that the motel cleaner job did not qualify as "past relevant work" based on: (1) evidence that she had worked the job less than full time and (2) evidence

of her earnings for the years of 2003-2004, which indicated monthly earnings less that those which would qualify as "substantial." (ECF No. 16:12-13). But the Court need not address this argument in light of the ALJ's findings that Plaintiff could perform her past work involving personal caregiver, which is supported by substantial evidence. *See supra*.

### D. Summary

The ALJ fulfilled his duties at all three phases of step four and his findings are supported by substantial evidence.

### ORDER

The Court has reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties. Based on the forgoing analysis, the Court **AFFIRMS** the Commissioner's decision.

ENTERED on May 23, 2019.

SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE